*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  June 18, 2015                    105101
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,

        v                                    MEMORANDUM AND ORDER

JAMEL PORTIS, Also Known as
    FLAME,
                        Appellant.
_____

Calendar Date:  April 29, 2015

Before:  Peters, P.J., Garry, Rose and Devine, JJ.

                    _____


        James P. Milstein, Public Defender, Albany (Theresa M.
Suozzi of counsel), for appellant.

        Eric T. Schneiderman, Attorney General, New York City
(Nikki Kowalski of counsel), for respondent.

                    _____


Devine, J.

        Appeal from a judgment of the Supreme Court (Breslin, J.),
rendered April 11, 2012 in Albany County, upon a verdict
convicting defendant of the crime of conspiracy in the second
degree.

        Numerous individuals were charged in a 12-count indictment
with offenses stemming from their purported participation in a
narcotics distribution ring.  The sole count pertaining to
defendant alleged that he and 14 others committed the crime of
conspiracy in the second degree.  Defendant's trial was severed
from that of the codefendants and, following a jury trial, he was
convicted as charged.  Supreme Court adjudicated defendant to be

a second felony offender and sentenced him to a prison term of 10 to 20 years.  Defendant now appeals.

We affirm.  Defendant first argues that Supreme Court erred in admitting, over his objections, statements made by his alleged coconspirators.  Inasmuch as each participant is deemed responsible for the acts and declarations of the others engaged in a conspiracy, "any declaration by a conspirator made during the course of and in furtherance of the conspiracy is admissible against a coconspirator as an exception to the hearsay rule" (People v Salko, 47 NY2d 230, 237 [1979]; see People v Caban, 5 NY3d 143, 148 [2005]; People v Bac Tran, 80 NY2d 170, 179 [1992]).  The People may not rely upon that evidence, however, without "showing that a prima facie case of conspiracy has been established" (People v Bac Tran, 80 NY2d at 179).  Therefore, the People were obliged to produce otherwise admissible "proof 'of an agreement to commit a crime and an overt act towards carrying out that agreement'" (People v Nicholas, 118 AD3d 1183, 1184 [2014], lvs denied 24 NY3d 1121, 1122 [2015], quoting People v Cancer, 16 AD3d 835, 839 [2005], lv denied 5 NY3d 826 [2005]; see People v Berkowitz, 50 NY2d 333, 341 [1980]).

Supreme Court correctly determined that the People met this burden.  The indictment alleged that the individuals named therein as the coconspirators had agreed to commit several offenses, but criminal sale of a controlled substance in the second degree was the only underlying crime charged to the jury at defendant's trial.  The People, as such, were required to show that defendant was part of a conspiracy to "knowingly and unlawfully sell[] . . . a narcotic drug . . . of an aggregate weight of one-half ounce or more" (Penal Law § 220.41 [1]).  Extensive electronic and physical surveillance was conducted as part of the investigation into the trafficking ring, and defendant made statements in recorded telephone conversations that "could be received in evidence as party admissions" (People v Caban, 5 NY3d at 151 n).  Defendant specifically engaged in a telephone conversation on April 18, 2010 in which he agreed to meet several of his alleged coconspirators and bring his

"paperwork" to the meeting.[1]  While defendant was in transit to the meeting, a coconspirator received several telephone calls and made admissible statements "relevant not for [their] truth, but rather as evidence of an agreement to commit the underlying crime" (People v Caban, 5 NY3d at 149; see People v Salko, 47 NY2d at 239).  That coconspirator, in particular, agreed to sell a half-ounce of cocaine to a customer who would arrive in a distinctive vehicle.  An investigator further testified that he observed the arrival of defendant and other coconspirators at the meeting site, as well as the subsequent arrival of the customer and activity consistent with the agreed-upon cocaine sale.  Although circumstantial, this evidence was sufficient to make out a prima facie case against defendant (see People v Hudson, 90 AD3d 437, 438 [2011], lv denied 19 NY3d 974 [2012]; People v Silva, 237 AD2d 216, 216 [1997], lv denied 89 NY2d 1100 [1997]).

Defendant next contends that the verdict was against the weight of the evidence.[2]  As noted above, a coconspirator sold a half-ounce of cocaine to a customer during a meeting attended by defendant.  Indeed, defendant was invited to attend several meetings with the coconspirators and participated in telephone calls regarding their operations.  The record contains evidence documenting several large purchases of narcotics by the coconspirators intended for resale, including a May 2010 purchase

_____

[1]  An investigator testified at trial with regard to the recorded telephone calls and stated that he recognized defendant's voice from their prior interactions.

[2]  Defendant states that his challenge is one directed toward the weight of the evidence, but refers to it elsewhere as a challenge to the legal sufficiency of the evidence and confuses the standards for legal sufficiency and weight of the evidence review in his brief.  We need not detain ourselves in discerning what argument defendant is actually endeavoring to assert, since our weight of the evidence review necessarily involves a determination as to whether "each element of the crime[] was proven beyond a reasonable doubt" (People v Rodriguez, 121 AD3d 1435, 1436 [2014], lv denied 24 NY3d 1122 [2015]; see People v Danielson, 9 NY3d 342, 349 [2007]).

of over a half-ounce of cocaine by defendant. Further, other intercepted telephone calls and physical surveillance reflected that defendant's coconspirators attempted to or did sell over a half-ounce of narcotics to customers on more than one occasion. It is far from clear that an acquittal would have been a reasonable outcome given this proof (see People v Romero, 7 NY3d 633, 643 [2006]; People v Bleakley, 69 NY2d 490, 495 [1987]). In any case, according due deference to the credibility determinations of the jury, we cannot say that its verdict is against the weight of the evidence (see People v Romero, 7 NY3d at 643-644; People v Calderon, 55 AD3d 321, 322 [2008]; People v Rojas, 281 AD2d 294, 294 [2001], lv denied 96 NY2d 834 [2001]).

Defendant also challenges the propriety of the Molineux ruling made by Supreme Court, which permitted the use of wiretap evidence documenting defendant's attendance at meetings with his coconspirators and the contemplated robbery of a drug supplier. Because the indictment provided extensive detail as to the scope and nature of the charged conspiracy, however, evidence of related overt acts was properly admitted "even though they amount[ed] to uncharged crimes" (People v Snagg, 35 AD3d 1287, 1288 [2006], lvs denied 8 NY3d 947, 950 [2007]; see People v Ribowsky, 77 NY2d 284, 292-293 [1991]; People v Morales, 309 AD2d 1065, 1066 [2003], lv denied 1 NY3d 576 [2003]).

Defendant further asserts that the Sandoval ruling, in which Supreme Court precluded the People from inquiring into approximately half of the items included in their Sandoval proffer but allowed inquiry into others, constituted an abuse of discretion. Defendant specifically complains of the fact that Supreme Court allowed full inquiry into his 1999 conviction for criminal possession of a weapon in the third degree. Remoteness in time does not "automatically require[] preclusion of a prior conviction" (People v Wilson, 78 AD3d 1213, 1215 [2010], lv denied 16 NY3d 747 [2011]; see People v Smith, 63 AD3d 1301, 1304 [2009], lvs denied 13 NY3d 862 [2009]), however, and the 1999 conviction was relevant to the issues of defendant's credibility and his willingness to place his own interests above the interests of society (see People v Riley, 117 AD3d 1495, 1496 [2014], lv denied 24 NY3d 1088 [2014]; People v Morris, 101 AD3d 1165, 1166 [2012], lv denied 20 NY3d 1102 [2013]). Thus, in our

view, the <u>Sandoval</u> ruling "appropriately balanced the probative value of the proof pertaining to defendant's credibility against the risk of unfair prejudice" (<u>People v Nichol</u>, 121 AD3d 1174, 1176 [2014]; <u>see</u> <u>People v Sandoval</u>, 34 NY2d 371, 375 [1974]).

There is nothing in the record to support defendant's claim that the sentence was vindictive or imposed as punishment for exercising his right to a jury trial (<u>see</u> <u>People v Griffin</u>, 122 AD3d 1068, 1071 [2014]; <u>People v Shoemaker</u>, 119 AD3d 1073, 1077 [2014], <u>lv denied</u> 25 NY3d 992 [2015]).  Supreme Court relied upon appropriate sentencing factors in imposing sentence and, after reviewing those factors ourselves, we are unpersuaded that the sentence was harsh or excessive (<u>see</u> <u>People v Grajales</u>, 294 AD2d 657, 659 [2002], <u>lv denied</u> 98 NY2d 697 [2002]).

Peters, P.J., Garry and Rose, JJ., concur.


ORDERED that the judgment is affirmed.




ENTER:

Robert D. Mayberger
Clerk of the Court